J. W. BURBAGE and Wife v. SAMUEL WINDLEY and H. A. WINDLEY, Ex'rs of R. C. WINDLEY.

*Insurance—Contract—Consideration—Wager—Pleading.*

1. In actions upon parol contracts it is necessary that the complaint should disclose a sufficient consideration.

2. W. took an insurance policy, payable to himself, upon the life of H. for $10,000 ; he had no insurable interest in the life of H., and it was alleged in the complaint that the only consideration which induced H. to have his life insured for W. was the promise of the latter that he would pay H.'s widow $500 from any moneys he might collect on the policy.    H. died and W. collected the sum specified in the policy, but refused to pay any part to the widow ; *Held*, that the alleged contract was without consideration, that · the promise was simply a wager, a mere gambling speculation— *contra bonos mores*—and would not be enforced.

*Shepherd* v. *Sawyer*, 2 Murphy, 26, commented upon and questioned.

CIVIL ACTION, tried before *Whitaker, J.*, at May Term, 1890, of BEAUFORT Superior Court.

The complaint alleges, in substance, that in the year 1883, R. C. Windley, now deceased, the testator of the defendants, at different times specified, applied to three several insurance companies, and obtained from each of them an insurance policy, granted and made payable to him and for his own benefit, whereby each, for the consideration specified therein, insured the life of John W. Hammond "on the ordinary life plan" for the sum of money in each specified, the three policies aggregating the sum of $10,000. It is not alleged nor does it at all appear that the said testator had any insurable, or any interest in the life of the said Hammond. It is alleged:

"*Third.*—That the consideration, and the only consideration, which induced and moved the said John W. Hammond to permit Mr. Windley to have his life insured was, that the said Windley contracted and agreed with the said John W. Hammond and his wife Sarah E. Hammond, that out of the moneys which the said Windley would collect on these policies and certificates of insurance upon the life of the said Hammond after his, the said Hammond's, death, he, Windley, would pay to Sarah E. Hammond, now Burbage, the sum of five hundred ($500) dollars."

Hammond died on the 15th day of January, 1884, leaving surviving him his said wife, who afterwards, on the 6th day of February, 1884, intermarried with her co-plaintiff. The said insurance companies afterwards, in the month of April, 1884, "took up the policies and certificates of insurance" from the said testator. The plaintiffs made demand of the said testator, in his life-time, that he pay to the *feme* plaintiff, who was his wife and widow of the said Hammond, the said sum of five hundred dollars, which he refused to do. The said R. C. Windley afterwards, on the 15th of December, 1886, died, leaving a last will and testament, which was proven, and the defendants qualified as executors thereof.

The plaintiffs bring this action to recover the said sum of $500. The defendants in their answer, deny the material allegations of the complaint; allege that said contracts of insurance were without consideration, and void as wagering contr cts, and against the policy of the law, and pleaded the statute of limitations.

On the trial there were several exceptions of the defendants to evidence received, others to instructions given to the jury, and others upon the ground that the Court refused to give certain instructions specially asked for by them. It is not necessary to report these, as this Court disposed of the case on another, and a different, distinct ground.

In this Court the defendants moved to dismiss the action upon the ground that the complaint fails to state facts sufficient to constitute a cause of action.

*Messrs. Simmons & Whitaker* (by brief), for plaintiffs.

*Messrs. J. H. Small* (by brief) and *W. B. Rodman, Jr.*, for defendants.

MERRIMON, C. J.—after stating the case: In this and like actions where the contract or promise sued upon is by parol, a sufficient consideration should be alleged in the complaint to support the contract or promise. This is essential, because otherwise no cause of action is alleged or appears in the pleadings. In some cases—such as where the cause of action is a bill of exchange or a promissory note, and some other legal liabilities—the mere statement of the liability which constitutes the consideration is sufficient. In these cases the nature of the liability itself sued upon implies the consideration; but in all other cases of simple contract it is necessary that the complaint should disclose a sufficient valuable consideration, whatever that may be. Moreover, the consideration alleged must be lawful and not in its nature, because of some tainting or vitiating quality in it,

void.   *Moore* v. *Hobbs*, 79 N. C., 535; *Burnett* v. *Besso*, 4 John., 235; 1 Chitty Pl., 294.

There are cases where a cause of action is imperfectly alleged in the complaint; this pleading may be helped by admissions in the answer, but this is not one of them. Indeed, there is no admission in the answer that, in any view of the allegations of the complaint, would help them at all. Hence, it appears from the complaint itself—the allegations of the supposed cause of action—that the only consideration alleged or relied upon is, as we shall presently see, unlawful and void as such.   In other words, it appears from the complaint that there is no consideration to support the promise to pay the sum of money for which the plaintiffs demand judgment.

The complaint itself discloses the material facts that R. C. Windley, the testator of the defendants, in his life-time, procured three policies of insurance, each purporting to insure the life of John W. Hammond, the former husband of the *feme* plaintiff, for a sum of money specified therein, the three sums aggregating ten thousand dollars—Windley, in consideration of permission given him by Hammond to so insure the latter's life, agreeing to pay of the money he might realize from such insurance five hundred dollars to the *feme* plaintiff.   It is not alleged that Windley had any insurable interest in the life of Hammond.   On the contrary, it appears by implication, if this is not expressly alleged, that he had none.   It is alleged "that the consideration, and the only consideration, which induced and moved the said John W. Hammond to permit Mr. Windley to have his life insured, was that the said Windley contracted and agreed with said John W. Hammond and his wife Sarah E. Hammond that out of the moneys which the said Windley would collect on these policies and certificates of insurance upon the life of the said Hammond after his, the said Hammond's death, he

Windley, would pay to Sarah E. Hammond, now Burbage, the sum of five hundred ($500) dollars."

It thus clearly appears that the purpose of Windley, with the knowledge, consent and co-operation of Hammond, was to insure the latter's life, in which he had no insurable interest, for his own benefit. He simply promised to pay the *feme* plaintiff of the money he might realize after the death of her husband five hundred dollars, expecting to realize nine thousand five hundred dollars for himself, less such premiums on the insurance as he might pay.

As the assured had no insurable interest in the life of the *cestui que vie* the contract was simply a wager—it was not founded upon any just and lawful consideration—it was a mere gambling speculation. The assured was not to be indemnified against loss, injury or disadvantage in any respect growing out of the life he insured; the insurance was not intended to serve any legitimate business purpose or end—it was purely a matter of speculation founded upon nothing but hazard.

Such contracts and speculations are wholly unnecessary; they cannot serve or promote any useful and wholesome purposes of individuals, society, or government. They do not stimulate, promote or encourage industry, enterprise, legitimate business, sound morality, or increase the wealth of the people or the strength and power of the State. On the contrary, their nature and uniform experience go to show that they represent nothing substantial or valuable, or of practical advantage to persons or communities. They strongly tend to demoralize society and embarrass industries and general business. In their very nature they stimulate, afford incentives to, and encourage those who become parties to them to resort to sinister, oftentimes criminal, means to turn or end the hazard in their favor, and thus gain unjust and dishonest advantage. They encourage men to engage in the business of speculation in hazards not necessary or use-

ful in the general purposes and businesses of life, but which is positively and seriously injurious to them. Such contracts and speculations contravene the justice and policy of the law—they are *contra bonos mores,* and are therefore void

While there is no decision of this Court directly in point here, it is well settled by a multitude of uniform decisions that all contracts against the policy of the law, and such as contravene sound morality, are on such account void. We cite a few of many cases. *Sharp* v. *Farmer,* 4 Dev. & Bat., 123; *Blythe* v. *Lovinggood,* 2 Ired., 20; *Ingram* v. *Ingram,* 4 Jones, 188; *King* v. *Winants,* 71 N. C., 469; *Williams* v. *Carr,* 80 N. C., 295; *Griffin* v. *Hasty,* 94 N. C., 438.

In *Shepherd* v. *Sawyer,* 2 Murphy, 26, the Court held that when "A agrees with B for $2\frac{1}{2}$ per cent. premium paid down to insure a negro slave reported to be lost in Pasquotank river; B has no interest in the negro, yet, his loss being proved, B is entitled to recover his value." This decision is placed upon the ground that it was an "innocent wager," and that such wagers were sanctioned by the common law. The opinion of the Court is very brief, and no authority is cited to show that it was "innocent," nor is any reason stated why it was such wager. If the Court intended that the case should have general application to wagers in insurance embracing cases like the present one, we cannot hesitate to say, in the absence of reasons stated in support of it, that, in our judgment, it is not sustained by the greater weight of reason or the greater weight of authority, certainly at the present day. *Ruse* v. *Ins. Co.,* 23 N. Y., 516; *Lord* v. *Dall,* 12 Mass., 115; *Ins. Co.* v. *Hazzard,* 41 Ind., 116; *Cormack* v. *Lewis,* 15 Wall., 643; *Ins. Co.* v. *France,* 14 U. S., 561; *Womack* v. *Davis,* 104 U. S., 775; Bliss on Ins., § 9.

The consideration of the contract or promise sued upon here, as expressly alleged, was the permission granted to the testator of the defndant by the former husband of the *feme* plaintiff Hammond to insure the latter's life. If such permission, in

any case or connection, be a valuable privilege or advantage, in this case, it was granted with the view and for the purpose of enabling and helping Windley to make an unlawful con·tract—a wager—on the life of Hammond. Thus the latter became connected with and intended to share in the wagering transaction. The promise to pay five hundred dollars to the *feme* plaintiff was expressly based upon and grew out of it; it was, as to Hammond and his wife, part of it. It partook of the wager—the vicious nature of the contract of insurance. Such consideration was, therefore, void. Hence, the promise founded upon it was without legal sanction and of no binding effect in contemplation of law. *Ex turpi causa non oritur actio. Duke* v. *Asbee,* 11 Ired., 112; *Bettis* v. *Reynolds,* 12 Ired., 344; *Covington* v. *Threadgill,* 88 N. C., 186; *Griffin* v. *Hasty,* 94 N. C., 438.

If, in good faith, the purpose had been to insure the life of Hammond for the benefit of his wife, the case, as to her, might have been very different. But, as we have seen, this was not the purpose or any part of it. The insurance was for the benefit of Windley; the policies were granted to and made payable to him: he promised to pay the small sum mentioned to the *feme* plaintiff for permission to insure the life.

As, therefore, it appears from the complaint that no cause of action is alleged, the motion to dismiss the action must be allowed.

Dismissed.