640     IN THE SUPREME COURT

**STATE v. GRACE**

[341 N.C. 640 (1995)]

STATE OF NORTH CAROLINA v. GERMAN JERMAINE GRACE

No. 228A94

(Filed 8 September 1995)

## 1. Evidence and Witnesses § 113 (NCI4th)— felony murder— witness gunman in another armed robbery—excluded—no error

The trial court did not err in a first-degree murder prosecution arising from an armed robbery by excluding testimony that an accomplice who testified against defendant had held a gun on the victim in a prior robbery. Although defendant argued that this evidence was relevant to prove that the accomplice had used the gun in the robbery in this case, it was inadmissible under N.C.G.S. § 8C-1, Rule 404(b) and *State v. McNeil*, 326 N.C. 712. It was not error to exclude evidence that tended to prove a person other than the defendant had committed a crime when the evidence did not show the same person had committed both crimes.

**Am Jur 2d, Evidence § 587.**

## 2. Evidence and Witnesses § 3050 (NCI4th)— felony murder—witness gunman in another armed robbery—bias

There was no error in a first-degree murder prosecution arising from an armed robbery in the exclusion of evidence that an accomplice who testified against defendant had held the gun in a previous robbery. Although defendant contended that this evidence was admissible to show bias, if the witness had shot the victim in this case, defendant would be guilty of felony murder, the crime of which he was convicted.

**Am Jur 2d, Witnesses §§ 901, 968.**

## 3. Evidence and Witnesses § 308 (NCI4th)— felony murder—armed robbery—defendant's possession of gun

There was no error in a first-degree murder prosecution arising from an armed robbery where the court admitted testimony that a crowd gathered at a club eleven days after the murder, one of the crowd became belligerent, defendant approached the crowd and asked who was causing the trouble, the belligerent individual advanced on defendant, defendant fired several shots over his head, the crowd dispersed, defendant dropped the pistol as he was running from the scene, and the gun was recovered and identified as having been used in the murder. Defendant concedes

STATE v. GRACE

[341 N.C. 640 (1995)]

that his having dropped the pistol which was possibly used as the murder weapon was admissible, but contends that the evidence that he fired over a person's head was irrelevant. This was not prejudicial; it shows that defendant was not the aggressor and that he acted to protect himself and other people.

**Am Jur 2d, Evidence §§ 452, 453.**

4. **Jury § 137 (NCI4th)— felony murder—armed robbery— jury selection—questions regarding race**

There was no abuse of discretion in a first-degree murder prosecution arising from an armed robbery where defendant contended that he was not allowed to question potential jurors extensively enough as to their racial attitudes to determine whether to exercise challenges for cause or peremptory challenges. The questions which defendant was allowed to ask the potential jurors were sufficient to allow him to probe their racial attitudes. At the least, the questions which were not allowed would not have been of any further help in making this judgment.

**Am Jur 2d, Jury §§ 273.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Greeson, J., at the 9 August 1993 Criminal Session of Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder in a case in which the defendant was capitally tried. Heard in the Supreme Court 13 March 1995.

The defendant was tried for the 9 December 1992 armed robbery and murder of a Domino's Pizza deliveryman. The evidence showed the defendant and four accomplices were looking for some place to rob. The five men were in front of Domino's Pizza, which was closed, when a delivery truck arrived.

The five men pulled the driver from the truck and robbed him. As the other men were leaving the scene, the defendant shot the victim three times. Two of the shots would have been fatal. The angle of the wounds indicated that the defendant was standing over the victim when the shots were fired.

The defendant was convicted of felony murder and robbery with a dangerous weapon. The jury could not reach a verdict after a sentencing proceeding, and the court sentenced the defendant to life in prison. Judgment was arrested on the robbery conviction.

The defendant appealed.

*Michael F. Easley, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to a ruling on the evidence. Tim Rice had testified for the State that he was an accomplice of the defendant in the robbery and that the defendant shot the delivery-man. The defendant called a witness who testified he was in prison serving a sentence for armed robbery. He would have testified that the robbery for which he was serving had occurred approximately one month before the robbery involved in this case and that Tim Rice had held a gun on the victim in the previous robbery. The defendant assigns error to the exclusion of this testimony. We find no error.

The defendant argues that the evidence that Tim Rice had used a gun in the previous robbery was relevant to prove he had used the gun in the robbery in this case. This argument by the defendant runs afoul of N.C.G.S. § 8C-1, Rule 404(b), which says that evidence of other acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C.G.S. § 8C-1, Rule 404(b) (1992); *see State v. Bogle*, 324 N.C. 190, 376 S.E.2d 745 (1989). If, as the defendant contends, there is some relevancy to this testimony, it is inadmissible under Rule 404(b).

This case is distinguishable from *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987), and *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988), upon which the defendant relies. In *Cotton*, we held it was error not to allow a defendant to introduce evidence that someone else had committed another crime because the evidence showed the same person had committed both crimes. Proof that someone else had committed the other crime was proof he had committed the crime for which the defendant was being tried. The defendant attempted to prove Tim Rice was the triggerman in this case because he had used a pistol in another case. In *McElrath*, we held it was error to exclude evidence that showed directly that someone else had committed the crime. The defendant did not attempt in that case to prove someone else had committed the crime for which he was being tried by showing the other person had committed some other bad act. This

case is more like *State v. McNeill*, 326 N.C. 712, 392 S.E.2d 78 (1990), in which we held it was not error to exclude evidence that tended to prove a person other than the defendant had committed a crime when the evidence did not show the same person had committed both crimes.

**[2]** The defendant also contends this testimony was admissible to show bias on the part of Tim Rice. He concedes that pursuant to N.C.G.S. § 8C-1, Rule 608(b), this extrinsic evidence cannot be used to attack the credibility of Tim Rice but says it can be used to show bias. The purpose for showing bias would be to show Tim Rice was not being truthful. This would be an attack on his credibility.

The defendant was hardly damaged by the exclusion of this evidence. If Tim Rice, rather than the defendant, shot the victim, the defendant would be guilty of felony murder for acting in concert with Tim Rice. *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). This is the crime for which he was convicted.

This assignment of error is overruled.

**[3]** The defendant next assigns error to the admission of evidence in regard to an incident that occurred outside the Club Suavey in High Point eleven days after the murder for which the defendant was being tried. The evidence showed that a crowd had gathered outside the Club Suavey and that there was a belligerent person among them. Defendant approached the crowd and asked who was causing the trouble. The belligerent person then turned on the defendant and advanced toward him. The defendant fired several shots over the head of the man who was advancing on him. The crowd dispersed, and as the defendant was running from the scene, he dropped the pistol. The gun was recovered by an officer and was later identified as being used in the murder of the deliveryman for Domino's Pizza.

The defendant concedes that evidence showing he dropped a gun which was possibly used as the murder weapon in the crime charged was admissible against him. He says, however, that the evidence that he shot over a person's head was irrelevant and should have been excluded. *United States v. Burke*, 948 F.2d 23 (1st Cir. 1991). We have held that evidence of another crime is admissible if it shows the defendant was in possession of a gun used in the commission of the crime for which the defendant is being tried. *State v. Rannels*, 333 N.C. 644, 430 S.E.2d 254 (1993); *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992). The evidence about which the defendant com-

plains was not prejudicial to him. It shows he was not the aggressor and that he acted to protect himself and other people at the Club Suavey.

This assignment of error is overruled.

[4] In his last assignment of error, the defendant contends that while the jury was being selected, he was not allowed to question potential jurors extensively enough as to their racial attitudes to determine whether to exercise challenges for cause or peremptory challenges. The defendant is black, and the victim was white. The defendant says he was only allowed to ask questions calling for conclusory answers.

The defendant cites as an example of the restrictive nature of the *voir dire* one instance where a potential juror had said that he did not believe a black man convicted of murdering a white should be sentenced to die because he was black. The defendant then asked the potential juror, "Why not?" and the court sustained an objection to this question. The defendant cites as a second example the sustaining of an objection to a question as to whether the potential juror would let the fact that she was black affect her verdict. The court then allowed the question in a different form. The court also sustained an objection to a question of a school teacher as to whether many of her black pupils had committed crimes.

The court allowed the following questions of other potential jurors: "You think if a black man is convicted of killing a white man he too ought to die?" "Would you be concerned of what your neighbors might say if you're part of a jury that let a black man go for killing a white man?" "You think you would feel pressure to find him guilty because you are black?" "Do you think you'd feel pressure to find him not guilty because you are black?" "[I]f a black man is convicted of murdering a white man, do you believe the black man should die?" "Would you in any way consider German Grace and the victim's race as evidence of German's guilt?" "Would you consider German Grace's race of being black and the victim's race being white as evidence of German's guilt?" "In deciding German Grace's guilt or innocence, would you consider his race is black and the deceased's race is white as any evidence of German's guilt or innocence?" "Do you think that it [death penalty] should be imposed in a case where the defendant is black and the victim is white?"

We believe the questions which defendant was allowed to ask the potential jurors were sufficient to allow him to probe their racial atti-

tudes. At the least, the questions which were not allowed would not have been of any further help in making this judgment. The court did not abuse its discretion. *State v. Robinson*, 330 N.C. 1, 12, 409 S.E.2d 288, 294 (1991).

We do not agree with the defendant that *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492 (1992), has changed the rule of *Robinson*. *Morgan* dealt with a reverse *Witherspoon* question and did not otherwise question the discretion of trial judges in conducting jury selection proceedings.

This assignment of error is overruled.

NO ERROR.